UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ESSEX INSURANCE COMPANY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 11-cv-6934 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| GALILEE MEDICAL CENTER SC, | ) | |
| d/b/a MRI Lincoln Imaging Center, | ) | |
| and LUIS ANGARITA, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Essex Insurance Company ("Essex") has brought this action against Defendants, Galilee Medical Center SC, d/b/a MRI Lincoln Imaging Center ("Galilee"), and Luis Angarita, M.D. ("Angarita") (collectively, "Defendants"). Essex has moved for summary judgment, seeking a declaration that it is entitled to a rescission of an insurance policy that was issued to Galilee due to material misrepresentations made by Defendants in their applications for the policy, or in the alternative, that it has no duty to defend or indemnify Defendants with respect to an underlying state court lawsuit.[1] Defendants have also filed motions for judgment on the pleadings, requesting a determination that Essex has a duty to defend them. For the reasons set out below, Essex's Motion is granted, and Defendants' Motions are denied.

---

[1] Essex has set forth other arguments in support of its Motion: (1) that Angarita was not an employee of the Named Insured; (2) Angarita's wrongful conduct was excluded by the Essex policy; (3) Angarita knew, prior to the start of the Essex policy period, of a potential claim under the policy; (4) Angarita's use of drugs not approved by the FDA was excluded under the policy; (5) Angarita's treatments at his home was not covered by the Essex policy; and (6) neither treatment nor the recommendation provided by Angarita to Ravelo constituted "professional services" under the Essex policy. However, it is not necessary to discuss or resolve these issues based on the analysis and ruling on the issue of rescission.

# BACKGROUND[2]

Essex is an insurance company, organized in Delaware and with a principal place of business in Glen Allen, Virginia. Galilee, a medical center, is an Illinois corporation with a principal place of business in Chicago, Illinois. Angarita, a doctor, is a citizen of Illinois. (Plaintiff's Rule 56.1 Statement of Uncontested Material Facts ("SOF") ¶¶ 1-3.) This Court has jurisdiction pursuant to 28 U.S.C. § 1332, and venue is proper pursuant to 28 U.S.C. § 1391(a). This dispute centers on whether Essex must defend or indemnify Angarita or Galilee, pursuant to a professional liability insurance policy, with respect to a lawsuit currently pending in the Circuit Court of Cook County, Illinois, *Ravelo v. Angarita, et al.*, No. 11 L 006675 (the "*Ravelo* lawsuit").

## *The Ravelo Lawsuit*

In the *Ravelo* lawsuit, Rosa Ravelo, a former patient of Angarita, has sued Angarita and Galilee for medical negligence based on mesotherapy treatments recommended and administered to her by Angarita. (SOF ¶¶ 6-8; *see also* Ravelo Second Am. Compl., Dkt. No. 101-3.) Mesotherapy is a non-surgical medical treatment involving injection of medications, including

---

[2] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and, in the case of any disagreement, to specifically reference the "affidavits, parts of the record, and other supporting materials relied upon." *See also Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 deems those facts admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *see also Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (the district court has discretion to require strict compliance with its local rules governing summary judgment). Furthermore, it is not the duty of the district court to scour the record in search of material factual disputes. *Roger Whitmore's Auto. Servs. Inc. v. Lake Co.*, 424 F.3d 659, 664 (7th Cir. 2005).

phosphatydlycholine, into subcutaneous layers of fat. (SOF ¶ 13.) Neither mesotherapy nor phosphatydylcholine injections have been approved by the Food and Drug Administration ("FDA") for any purpose.[3] (SOF ¶¶ 14-15.) According to Angarita, "mesotherapy is intended to dissolve deposits of subcutaneous fat to reduce the size of isolated portions of the body in order to provide a more desirable body shape and contour for patients. Common examples include flattening areas of cellulite and smoothing … [the] pouching of a woman's stomach following birth." (Angarita's Rule 56.1(b)(3)(c) Statement of Additional Facts ("ASAF") ¶ 2.) By his own admissions, Angarita "has provided mesotherapy treatment to over 5,000 patients during his career." (*Id.* ¶ 1.)

Ravelo has alleged that Angarita administered mesotherapy treatments to her, at 3 E. Quincy St. in Riverside, Illinois, from November 15, 2008 through July 30, 2009, and that as a result, she developed painful, blister-like, infected granulomas on her body. (SOF ¶¶ 17-18; *see also* Ravelo Second Am. Compl. ("SAC"), Dkt. No. 101-3.)[4] Angarita has admitted that: (1) he recommended mesotherapy; (2) he administered mesotherapy to Ravelo at his residence at 3 E. Quincy St. in Riverside, Illinois; and (3) the FDA has not approved mesotherapy for any purpose. (*See* SOF ¶ 17; Galilee's Resp. to SOF ("Galilee's Resp.") ¶ 17; *see also* Angarita

---

[3] Indeed, by press release dated April 7, 2010, the FDA stated that it had issued warning letters to several U.S. based medical spas and a company in Brazil for making false statements about mesotherapy. The FDA noted that it had received reports of adverse effects in persons who have had mesotherapy "including permanent scarring, skin deformation, and deep painful knots." *See* http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm207453.htm (last visited October 10, 2013).

[4] Ravelo has amended her complaint a few times; in the most recent version, her second amended complaint, Ravelo alleges that she consulted with Angarita about mesotherapy and that he recommended mesotherapy for purposes of "size reduction." (*See, e.g.,* Ravelo SAC ¶¶ 19, 20.) However, it is undisputed that in previous complaints, Ravelo alleged that Angarita recommended mesotherapy for "weight loss." (*See, e.g.*, Essex's Memorandum in Supp. of Summary Judgment, Exh. A ¶¶ 19, 20.)

3

Resp. Brief at 3.) Ravelo has sued Angarita and Galilee, d/b/a/ Affiliated Physicians, alleging that she has incurred severe and permanent injuries and seeking damages in excess of $50,000.

*The Essex Insurance Policy*

Essex issued a professional liability insurance policy, policy number SM-878273, to Galilee for the period of March 1, 2011 to March 1, 2012 (the "Essex policy"). (SOF ¶ 23.) Galilee Medical Center SC DBA: MRI Lincoln Imaging Center is the named insured under the policy. (SOF ¶ 24.) Under the Essex policy, Essex is obligated to pay for claims against the "Insured" for "Professional Personal Injury by reason of any act, error or omission in Professional Services," provided that, prior to the effective date of the policy, that the insured had no knowledge of such claims. (SOF ¶ 26.) The Essex policy defines "Insured" as Galilee and "any principal, partners, officer, director, employee . . . . solely while acting on behalf of [Galilee] and within the scope of his/her duties as such." (SOF ¶ 25.) The Essex policy restricts coverage to seven specified office locations within Chicago, Illinois; Angarita's address at 3 E. Quincy St., Riverside, Illinois is not one of those locations. (SOF ¶ 32-33.)

Both Galilee and Angarita submitted applications to Essex in support of Galilee's policy request; those applications contained a notice that the application would be considered part of the policy and that Essex would rely on the information submitted in issuing the policy. (SOF ¶¶ 34-38.)[5] The Essex policy contained a condition that, by accepting the policy, Galilee agreed that those applications were part of the policy and that Essex had relied on the truth of the representations in the applications and deemed the representations material to the acceptance of the risk assumed by Essex. (SOF ¶ 31.)

---

[5] Galilee's application was dated February 21, 2011; Angarita's application was dated August 20, 2008. (SOF ¶¶ 34, 37.)

In its application, Galilee answered "No" to the following question: "Does the Applicant's employees or independent contractors [u]se drugs for weight reduction for patients?" (SOF ¶ 36.) The application further stated, "If Yes, attach a list of drugs used and percentage of practice devoted to weight reduction"; Galilee did not identify any such drugs. (SOF ¶ 36.) Galilee also answered "No" to the question of whether its employees or independent contractors performed any experimental procedures or research testing, and whether those experimental procedures were FDA approved. (SOF ¶ 36.) Likewise, Angarita answered "No" as follows to these questions on his application:

> With the exception of surgery for obesity, does your practice include
> weight reduction or control by other [*sic*] than diet or exercise?..............[ ]Yes [X] No
>
> * * *
>
> 5.(b) *Do you dispense any drugs?* …........................................................[ ]Yes [X] No
>
> * * *
>
> 5.(c) *Do you use injections for weight control?* …...................................[ ]Yes [X] No
>
> * * *
>
> 9.(a) Do you use experimental procedures, devices, drugs or therapy in
> treatment or surgery? …..........................................................................[ ]Yes [X] No

(SOF ¶ 39 (emphasis added).) Frances O'Connell, the managing director of Markel Services, Incorporated, which is the underwriting manager for Essex, has submitted an affidavit stating that if Galilee and Angarita had answered "Yes" to those questions above, Essex would not have issued the Essex policy to Galilee or would have issued it for a much higher premium than the premium charged. (SOF ¶ 41.)

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

**ANALYSIS**

As the parties agree, Illinois substantive law governs this diversity case. *See, e.g., Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Under Section 154 of the Illinois Insurance Code, 215 ILCS 5/154 ("Section 154"), an insurance company may deny coverage, *inter alia*, because of a misrepresentation in an insurance application where the misrepresentation "materially affects either the acceptance of the risk or the hazard assumed by the company." 215 ILCS 5/154.[6] A misrepresentation is "a statement of something as a fact which is untrue and affects the risk taken by the insurer." *Methodist Medical Center v. American Medical Sec. Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (quoting *Ratcliffe v. Int'l Surplus Lines Co.*, 550 N.E.2d 1052, 1057 (Ill. App. Ct. 1990)). Failing to disclose material information on an insurance application can constitute a misrepresentation. *Methodist Medical Ctr.*, 38 F.3d at 320. A misrepresentation, even if made by mistake or in good faith, will void a policy if the misrepresentation materially affected the insurer's acceptance of risk. *Ratcliffe*, 550 N.E. 2d at 1057; *see also Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1016 (Ill. 2003) ("a misrepresentation, even if innocently made, can serve as the basis to void a policy"); *Methodist Medical Ctr.*, 38 F.3d at 320. "Whether a misrepresentation occurred is determined objectively, on the basis of the facts known to the insured at the time of application, regardless of the

---

[6] Specifically, Section 154 provides: No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. 215 Ill. Comp. Stat. 5/154.

7

insured's subjective belief as to the truth of the representations." *Western World Ins. Co. v. Majercak*, 490 F. Supp. 2d 937 (N.D. Ill. 2007) (citing *Ratcliffe*, 550 N.E.2d at 1057–58).

Here, Essex argues that Defendants made the following material misrepresentations: (1) Galilee's answer of "No" when asked whether its employees use drugs for weight reduction; (2) Angarita's answers of "No" when asked if his practice includes weight reduction by methods other than diet or exercise and if he "dispenses drugs or uses injections" for weight control; (3) Galilee's answer of "No" when asked whether its employees use experimental procedures and leaving the space blank when asked if any experimental procedures had been approved by the FDA; and (4) Angarita's "No" answer when asked if he uses experimental procedures, drugs or therapy in treatment. (SOF ¶¶ 17, 36, 39.) Defendants respond that the applications were not misrepresentations because Angarita uses mesotherapy for "size reduction," not "weight reduction." They further argue that any misrepresentations were not material to Essex's issuance of the Essex policy.

Defendants' argument that there is a material difference between "size reduction" and "weight reduction" is disingenuous, at best. Angarita has admitted that he practices mesotherapy, with injections of a drug that has not been approved by the FDA, as a means to "dissolve deposits of subcutaneous fat to reduce the size" of his patients. (ASAF ¶ 2.) No reasonable juror could find that Essex's applications asking about "weight reduction" practices and injections did not also include "size reduction" practices or injections meant to "dissolve fat."[7] Defendants have failed to show that there is a genuine issue of material fact as to whether Galilee's and Angarita's applications contained misrepresentations and omissions about weight

---

[7] Indeed, Defendants do not argue that these "size reduction" practices were intended to make Ravelo shorter.

8

reduction practices. *See, e.g., New England Mutual Life Ins. Co. v. Bank of Illinois in DuPage*, 994 F. Supp. 970, 977 (N.D. Ill. 1998) (granting summary judgment in favor of insurer and rescinding policy based on applicant's failure to disclose material information).

Likewise, Defendants have not shown that there is a genuine issue of material fact whether their misrepresentations were material. A material misrepresentation is "one that affects either the acceptance of the risk or the hazard assumed by the insurer." *Western World Ins. Co.*, 490 F. Supp. 2d at 943 (citing *Methodist Med. Cent.*, 38 F.3d at 320). Materiality can be demonstrated by showing that the insurance company would have imposed different conditions on the insurance policy, including a higher premium, if the company had known the truth of the misrepresentations. *Western World Ins. Co.*, 490 F. Supp. 2d at 943 (voiding insurance policy based on material misrepresentations).

Defendants argue that Essex would have issued the Essex policy even if Essex had known about Angarita's mesotherapy practice. Defendants have submitted no support for this argument, except to point to the application questions asking about what types of drugs would be used for weight reduction. Defendants' argument is undercut by the questions themselves and does not create a genuine issue of material fact. The detailed questions on the applications about weight reduction, drugs, and injections demonstrate that those representations were, in fact, material to Essex. Moreover, the applications clearly stated that the information was material to Essex and that Essex would rely on that information in accepting the risk in issuing the Essex policy.

Essex also has submitted evidence in the form of an affidavit from a managing director of its underwriter manager, O'Connell, demonstrating that Essex would not have issued the policy

9

or would have issued the policy under different conditions had Defendants answered the weight reduction questions truthfully. Testimony from "an underwriter/employee may be sufficient to establish the materiality of a misrepresentation or omission in an application for insurance." *Western World Ins. Co.*, 490 F. Supp. 2d at 943. Although Defendants take issue with the O'Connell affidavit as self-serving, this is insufficient to create a material issue of genuine fact.[8]

No genuine issue of material fact exists as to whether Defendants made material misrepresentations in their applications for the Essex policy. Galilee's and Angarita's denials about weight loss practices were materially false and significantly altered the risk that Essex was assuming in issuing the Essex policy. As such, the applications did not create a valid insurance contract under Illinois law and the Essex policy is properly declared void and rescinded.

## CONCLUSION

For the reasons stated above, Essex's Motion for Summary Judgment [106] is granted, and the Essex policy is voided and rescinded pursuant to 215 ILCS 5/154. The alternative relief requested by Essex is denied as moot; and Defendants' Motions for Judgment on the Pleadings [109, 111] are denied as moot.

---

[8]An affidavit should not be disregarded simply because it is "self-serving." *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). As the Seventh Circuit has stated, "[m]ost affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial." *Id.* (citing *Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005); *see also Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005) ("We have repeatedly stated that the record may include a so-called 'self-serving' affidavit provided that it is based on personal knowledge.").

All pending matters having been resolved, this civil case is terminated.

Date: October 23, 2013

JOHN W. DARRAH
United States District Court Judge